UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| DENISE VENERO, et al.<br><br>Plaintiffs,<br><br>v.<br><br>PRINCE GEORGE'S COUNTY, MARYLAND, et al.<br><br>Defendants. | CASE NO.: 8:22-cv-01805-GJH<br><br>**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION ON BEHALF OF PROPOSED INTERVENOR GEORGE PENA** |

**PRELIMINARY STATEMENT**

This memorandum of law is submitted by Plaintiffs Denise Venero, Sophia Venero, and Stephany Venero ("Plaintiffs") in support of Emergency Motion for a Temporary Restraining Order on behalf of Proposed Intervenor George Pena.

**I.      George Pena[1]**

George Pena ("Pena") is a resident of the State of Maryland and lives in the County of Prince George, Maryland. On June 18, 2022 Pena's mother took his dogs Bubba and Heidi to the river near Riverside Park to play in the water and swim. His dogs love the water. While the dogs were swimming and playing fetch with his mother, they were unleashed. A man with his dog, came into the area where Pena's dogs were playing and swimming. His dogs got into a fight with the other man's dog, and Pena's mother got bit by the man's dog as she tried to separate the dogs.

---

[1] George Pena's Declaration is attached hereto and incorporated herein as Exhibit A. The Caption title of the Declaration is for the Motion to Intervene, but the content is applicable to this Motion. If the Court desires, Plaintiffs will amend Pena's caption and declaration to correctly set forth that it is being submitted for the TRO Motion.

1

About two hours after this incident, Prince George's County Police and Animal Control showed up at Pena's house, and Animal Control Officer Deppner (#905) took his two dogs. Officer Deppner told Pena that within eight days Pena had to send in a copy of the vaccination records in order to get the two dogs back. Pena submitted to the Animal Shelter the vaccination records within eight day. As he did not hear from the Animal Control personnel at the eighth day mark, Pena called Officer Deppner to ask when he could get the dogs back. Officer Deppner told me him that they were going to send him a letter in the mail regarding his dogs.

Pena got the letter in the mail on July 2, 2022 and that letter was titled Notice of Violation dated June 23, 2022. The Notice of Violation stated,

> Section 3-131(c) 'Manner of keeping animals – No person shall keep or maintain any animal in Prince George's County in such manner as to cause or permit animal to be a public nuisance'; Section 3-135 'Animals at Large Prohibited'; Section 3-136 'Dangerous Animals'; Section 3-142 'Irresponsible Pet Owner'; Section 3-182 'Potentially Dangerous Animals'; Section 3-185.01 'Pit Bull Terriers'; and Section 3-186 'Rabies Vaccination of Dogs, Cats, and Ferrets'

The Notice of Violation stated that Pena would not get his dogs back,

> After thoroughly reviewing your case, the following decision has been made regarding your case.
>
> **We do NOT intend to return this dog to you.**

Pena received the Notice of Violation with only three days left by which to file the bond and appeal – which was July 5, 2022. The Fourth of July was a Holiday, so the Animal Facility was closed. Pena took off work on July 5, 2022 and went to the Animal Facility to pay the bond. When he tried to pay the bond the lady at the front desk had no idea what he was talking about.

2

He was able to speak with an animal control officer and he helped Pena to process the bond payment.  Pena also submitted a request for a hearing to the Animal Commission.

After Pena paid the bond, he telephoned Officer Deppner because ACO Cooke did not answer his telephone calls.  Pena telephoned Officer Deppner to discuss when he could get his dogs back.  Officer Deppner told him to call ACO Cooke as he was the lead on the case or deals with those type of cases.  Pena was able to reach ACO Cooke who told him that it would be 60 to 75 days before a hearing was held in his case. After 30 days had passed , he telephoned ACO Cooke again, to see if there was any update on my hearing and ACO Cooke stated that he had to keep waiting for the hearing.  Pena then waited another 30 days, and telephoned ACO Cooke three times to get an update on how Bubba and Heidi were doing, and if there was any indication of when a hearing would be held.  He never returned any of these calls.

On August 21, 2022 Pena emailed Edward L. Jefferson of Prince George's County, and asked when the hearing would be held.  Mr. Jefferson responded on August 22, 2022 telling Pena his hearing was scheduled for October 12, 2022.  It has been 69 days since Pena's dogs were taken by Prince George's County.  Ray's Affidavit is attached hereto as Exhibit A.

**TEMPORARY RESTRAINING ORDER STANDARD**

In the Fourth Circuit, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 102-03 (4th Cir. 2022) (quoting *Winter v. NRDC, 555 U.S. 7*, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).  The standards for granting a preliminary injunction and for granting a temporary restraining order are

identical. *See Lighthouse Fellowship Church v. Northam*, 458 F. Supp. 3d 418, 427-28 (E.D. Va. 2020).

As set forth below, Plaintiffs have more than enough evidence to show that Proposed Intervenor George Pena likely to succeed on the merits of their claims, that he will suffer irreparable harm if the relief is not granted, and that the balance of the hardships tips sharply in their favor. Accordingly, Plaintiffs ask this court to grant their plea for preliminary injunction, so that Pena can seek to recover his property by emerging victorious in a proceeding before a neutral magistrate and enjoy their property without fear of undue interference in the future.

### PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED

A party seeking a preliminary injunction must show that she is likely to suffer irreparable harm in the absence of preliminary relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also, Smith v Ozmint*, 444 F. Supp. 2d 502, 504 (D.S.C. 2006). Irreparable injury must be both imminent and likely. *Id.* at 22. Plaintiffs bear the burden of showing that each factor supports their request for preliminary injunction. *Direx Israel, Ltd. v. BreakthroughMed. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

"[A] preliminary injunction is not normally available where the harm at issue can be remedied by money damages." *Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) (*citing Hughes Network Systems, Inc. v. InterDigital CommunicationsCorp.*, 17 F.3d 691 (4th Cir. 1994)). No amount of money can replace the loss of Bella and Mimi, as they are irreplaceable and priceless. Deprivation of Pena's property without due process constitutes irreparable harm. "[A]ny period of violation of its due process rights would amount to irreparable harm." *Langham Branch Creek Quarry, LLC v. York Cnty.*,

2022 U.S. Dist. LEXIS 71582, 2022 WL 1156875 (D. Sc. 2022). "[W]here Plaintiffs' constitutional rights are being violated, there is a presumption of irreparable harm." *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, (W.D. Va. 2018) (citing *Davis v. District of Columbia*, 158 F.3d 1342, 1343, 332 U.S. App. D.C. 436 (4th Cir. 1998) (citing *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987)).

Pena has suffered and will continue to suffer unconstitutional deprivations which monetary damages cannot adequately address, and there is no harm more immediate nor irreparable then the failure to provide a prompt post-seizure hearing as required by *Mathews*. The foreseeable consequences of Defendants' continuing misconduct are severe and immediate. This Court must act to protect Pena's constitutional rights. Absent a preliminary injunction, Pena will suffer an incalculable loss of these rights which cannot be addressed by monetary damages.

## PENA WILL PREVAIL UPON THE MERITS

Plaintiffs will demonstrate that Pena is likely to succeed on the merits.

### I. Yet Again Prince George's County Has Failed to Provide a Person with a Preliminary Hearing as Required by Law

It has been more sixty-nine days since Pena's dogs (Bubba and Heidi) have been seized by Prince George's County. Prince George's County Ordinance Section 3-136(c) mandates that once a dog is impounded under that dangerous animal ordinance, "the owner shall be notified within forty-eight (48) hours of the impoundment of a right to a preliminary hearing." The purpose of the preliminary hearing, according to Section 3-136(c) is "for the sole purpose of determining whether the owner of the animal is capable of restraining the animal from attacking, biting or injuring any human being or other animal until it can be determined at a hearing

5

conducted by the Animal Control Commission whether the animal is dangerous." Defendants are not authorized under any Ordinance to eliminate the 3-136(c) notice and a preliminary hearing upon the County's determination that the dogs are "pit bulls."

Proposed Intervenor Pena never received a notice and a hearing as required by Prince George's County Ordinance Section 3-136(c).

To establish a violation of procedural due process, Pena must show that (1) he has a property interest, (2) of which the Government deprived him, (3) without due process of law. *See Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). Procedural due process requires, at a minimum, fair notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Pena has a right under the Fourth Amendment to due process. Pena has a property interest in his dogs. Courts have consistently held that dogs are private property and that dog owners have a legitimate property interest in their dogs. *See, Altman v. City of High Point, N.C.*, 330 F.3d 194 (4th Cir. 2003); *Siebert v. Severino*, 256 F.3d 648 (7th Cir. 2001); *O'Neill v. Louisville/Jefferson County Metro Gov.*, 662 F.3d 723 (6th Cir. 2011).

Pena has not received sufficient due process, and to date has not had any hearing whatsoever about his dogs and the seizure of his dogs. Although the statute (3-136) provides adequate due process when a dog is impounded by requiring notice to be provided within 48 hours, and requiring a preliminary hearing to be schedule with 72 hours of a written request by the owner, Defendants failed to abide by the laws implemented by the County, and wholly failed to provide due process. To date Pena has not been afforded the preliminary hearing, nor any other prompt post-seizure hearing.

II.     **"Pit Bull" Ordinance Does Not Authorize Impoundment**

Prince George's County has a Pit Bull ban. Prince George's County Ordinance 3-185.01 titled "Pit Bull Terriers" states,

> (a) Except as provided below, no person shall own, keep, or harbor a Pit Bull Terrier within the County.
> (b) Any person owning a Pit Bull Terrier prior to November 1, 1996, may continue to harbor the animal on his premises under the following conditions * * *

The definition of a "pit bull" is set forth in Ordinance 3-101, and is as follows,

> Pit Bull Terrier shall mean any and all of the following dogs:
> (A) Staffordshire Bull Terrier breed of dogs;
> (B) American Staffordshire Terrier breed of dogs;
> (C) American Pit Bull Terrier breed of dogs;
> (D) Dogs which have the appearance of being predominantly of the breed of dogs known as Staffordshire Bull Terrier, American Staffordshire Terrier, or American Pit Bull Terrier. Predominantly shall mean that the dog exhibits the physical characteristics of a Pit Bull Terrier more than any other breed of dog;
> (E) Dogs which have been registered at any time as a Pit Bull Terrier.

Prince George's County's law further states that if any pit bull within the county injures a person or another animal at any time, it will automatically be "destroyed." *Id.* § 3-116.01(b). A violation of Ordinance 3-185.01 is a criminal offense,

> Sec. 3-116.01. – Criminal penalties; violations.
> (a) Any person found to have violated any provision of Section 3-185.01 shall be fined up to $1,000.00 or may be sentenced to not more than six (6) months of imprisonment.
> (b) A Pit Bull that causes injury to or kills a human being or a domestic animal without provocation shall be humanely destroyed, and the owner of such dog shall be fined up to $1,000.00 or may be sentenced to not more than six (6) months of imprisonment.

Prince George's County is not authorized to impound a dog based upon Prince George's County's labeling of a dog as a "Pit Bull". Prince George's County is not authorized to impound a dog unless it is "found at large." *See* Prince George's County Ordinance Sec. 3-122.

- Impounding animals; procedure which provides in relevant part,

7

>(a) Animals found at large with a license tag, rabies tag, tattoo, microchip, or other indications of ownership shall, except as otherwise provided in this Subtitle, be impounded and taken to the Animal Services and Adoption Center and there confined in a humane manner for a period of not less than five (5) business days, unless sooner claimed and redeemed by its owner.
>
>\* \* \*
>
>(d) Domesticated animals may be impounded when found at large or abandoned, and disposed of in accordance with procedures established pursuant to regulations promulgated by the Director.

Because there is no authorization for Prince George's County to impound Marble, Marble must be immediately released to Ray.

### III. Prince George's County "Pit Bull" Ordinance is unconstitutional both facially and as applied.

Prince George's County "Pit Bull" Ordinance is unconstitutional both facially and as applied. County Ordinance 3-185.01, titled Pit Bull Terriers, provides in subsection (a) that a person is barred from owning, keeping, or harboring a "Pit Bull Terrier", unless they owned said "Pit Bull Terrier prior to November 1, 1996." See 3-184.01(b). The breeds of Plaintiffs' dogs are not "Pit Bull Terrier". Ordinance 3-101 defines a "Pit Bull Terrier" as.

>(A) Staffordshire Bull Terrier breed of dogs;
>(B) American Staffordshire Terrier breed of dogs;
>(C) American Pit Bull Terrier breed of dogs;
>(D) Dogs which have the appearance of being predominantly of the breed of dogs known as Staffordshire Bull Terrier, American Staffordshire Terrier, or American Pit Bull Terrier. Predominantly shall mean that the dog exhibits the physical characteristics of a Pit Bull Terrier more than any other breed of dog;
>(E) Dogs which have been registered at any time as a Pit Bull Terrier

There is no ability for Pena to contest, in a meaningful time and manner, Defendants' determination that his dogs are "Pit Bull Terriers" without any hearing or opportunity to be heard

8

and no scientific evidence, and without even a basic explanation of how and why this determination was made, and upon what basis.  Zero process.  There is no ability to contest in a meaningful time and manner the impoundment of a dog deemed to be a "Pit Bull Terrier."

The American Kennel Club does not recognize "pit bull" as a specific breed.  *See* AKC Government Relations, *Why Breed Bans Affect You*, February 1, 2018.[2]  The Ordinance fails to define how the County determines whether the dog is a "Pit Bull."  The Ordinance fails to authorize seizure and impoundment of a dog deemed to be a "Pit Bull".

Pena clearly has a property interest in the dogs seized by Defendants.  He also has a right to notice and an opportunity to be heard in a meaningful time and manner.  *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).  Sixty-nine days since the seizure of his dogs, and he still has not been provided with any hearing whatsoever.

In *Dias v. City & County of Denver*, the Ordinance authorized officials to impound any Pit Bull found with the City or County.  *Dias v. City & County of Denver*, 567 F.3d 1169, 1174 (10th Cir.).  The Ordinance provided the owner with "the right to a post-seizure hearing at which Denver must prove by a preponderance of the evidence that the dog is in fact a pit bull."  *Id.* (internal citations omitted).  The Prince George's County Ordinance provides no such protections whatsoever.

Prince George's County has (1) no standards of conduct by which a person can determine whether their dog is a "Pit Bull"; (2) no standards, rules, policies, procedure, law, or regulation for how a dog is designated as a "Pit Bull"; (3) no information available as to what quantum of proof will be at a hearing; (3) no information available as to who bears the burden of proof and

---

[2] available at https://www.akc.org/expert-advice/news/breed-bans-affect/#:~:text=The%20American%20Kennel%20Club%20takes,banned%20%E2%80%93%20regardless%20of%20their%20parentage.

persuasion; (4) what rules of evidence apply to such hearings.  According to the County, the DNA of a dog is not proof that it is not a "Pit Bull."  The manner in which the County actually identifies a dog as a "Pit Bull" is apparently based upon whether someone, employed by the County, and having no demonstrated expertise in the scientific identification of dog breeds, concluded that in their opinion a dog has a square shaped head.[3]  Based upon this unscientific (and totally arbitrary) methodology, there is no rational relationship between the "Pit Bull" ban and the purpose of the ban – which is to protect the health and safety of the public.  Because the County does not care whether the dog is "predominantly" of the three breeds (Staffordshire Bull Terrier, American Staffordshire Terrier, or American Pit Bull Terrier) set forth in the Ordinance, and instead bases its designation upon appearances, this results in a system that ignores whether or not a dog is actually predominantly one of the banned breeds.  Prince George's County's methodology for determining whether a dog is a "Pit Bull" is not based upon a scientific methodology.  The designation of a dog as a "Pit Bull" is not based upon any scientific methodology (DNA), and there is no way to contest a designation because Prince George's County permits designation of dogs as "Pit Bulls" based upon a visual assessment of how the dog looks.  To have a hearing on the "Pit Bull" designation does not provide a meaningful opportunity to contest the designation.

Prince George's County's "Pit Bull" ordinance bears no rational relationship to the purpose of the statute and therefore violates the Equal Protection clause of the Fourteenth Amendment.  During the TRO Hearing held before this Court on July 15, 2022, Defendant ACO

---

[3] A whistleblower has informed that dogs are identified as "Pit Bulls" based upon the shape of their head.  If the head is a block type shape, it will be labeled a "Pit Bull."

Cooke informed the Court and the parties, that a DNA[4] test is irrelevant to Defendants' designation of the dog as a "pit bull."  This is analogous to the internment of Japanese Americans during WWII, where it did not matter if a person had any Japanese blood in them.  If they look like a "Nip"[5] that is sufficient to intern them.[6]  "In comic book-style scenes, soldiers are taught that 'the Jap' has many giveaway physical traits - including 'buck teeth', 'lemon-yellow skin', 'eyes slanted towards his eyes' and a 'wide space' between the first and second toes."[7]  According to a Western University of Health Sciences, Ponoma, California, Dog Breed Identification Poster (Exhibit L), breed misidentification is common,[8]

> •Looking at the photographs, it is apparent that many mixed breed dogs do not closely, if at all, resemble the predominant breeds identified by DNA.
> •Mixed breed dogs may not look like their parents or grandparents
> •These results do not allow a conclusion that shelter personnel cannot identify purebred dogs
> •Breed identities at adoption agencies can be assigned by owners relinquishing their dogs, by anyone working or volunteering at a facility, or be based on what a puppy's mother looks like

---

[4] According to the University of Florida, College of Veterinary Medicine, "DNA studies reveal that shelter workers often mislabel dogs as 'pit bulls', February 17, 2016, "DNA results show that shelter workers are often mistaken when they label a dog as a pit bull, with potentially devastating consequences for the dogs, a new University of Florida study has found."  Available at https://www.vetmed.ufl.edu/2016/02/17/dna-studies-reveal-that-shelter-workers-often-mislabel-dogs-as-pit-bulls/; See also, George Dvorsky, "A Shocking Number of Dogs in Shelters Are Misidentified as 'Pit Bulls', Gizmodo, February 18, 2016, available at https://gizmodo.com/a-shocking-number-of-dogs-in-shelters-are-misidentified-1759879362.
[5] "Nip" is a contemptuous term used to refer to a Japanese person."  See https://www.dictionary.com/browse/nips
[6] See Iain Burns, *How to spot a Jap': Shocking racist WWII propaganda pamphlet used comic-book style drawings and horrendous stereotypes to tell US servicemen how to distinguish between Chinese allies and Japanese foe*, October 26, 2017, available at https://www.dailymail.co.uk/news/article-5020743/Shocking-WWII-propaganda-pamphlet-spotting-Jap.html.
[7] Id.
[8] Available at https://nationalcanineresearchcouncil.com/wp-content/uploads/2016/02/VoithChadikIngramIrizarryMitsourasMarilo.Dog-Breed-Identification-Poster.pdf.

11

As explained in an article titled "10 Dog Breeds Most Commonly Mistaken for Pit Bulls,"[9] the following breeds are commonly misidentified as pit bulls,

1. American Bulldog
2. Presa Canario
3. Cane Corso
4. Bull Terrier
5. Boxer
6. Dogo Argentino
7. Staffordshire Bull Terrier
8. Bullmastiff
9. Olde English Bulldogge
10. Alapaha Blue Blood Bulldog

In theory, a ban on all dogs would serve the government's safety interest more effectively than the current ban, because dogs that are actually "Pit Bulls" are not being designated as such because of the manner by which Defendants designate a dog as a "Pit Bull." If the process of determining whether a dog is a "Pit Bull" is based upon a system which eliminates scientific evidence that would show whether or not the dog is in actuality a "Pit Bull", there can be no rational relationship between the purpose of the Ordinance, that being to protect the health and safety of the public, and the classification set forth in the Ordinance. Instead of the "Pit Bull" ban actually addressing the health and safety of the community, it instead permits dogs that may be predominantly of the three banned breeds to reside in Prince George's County, and impounds and detains, and kills dogs that are not predominantly of the three banned breeds. The end result does not justify the means. In 2018 alone, Prince George's County killed approximately 400 "Pit Bulls".[10]

---

[9] https://pethelpful.com/dogs/10-Breeds-Most-Commonly-Mistaken-For-Pit-Bulls
[10] See https://www.washingtonpost.com/local/md-politics/about-400-pit-bulls-euthanized-last-year-in-prince-georges-officials-say/2019/10/07/7f95c83a-e90e-11e9-9306-47cb0324fd44_story.html

The "Pit Bull" ban is an invidious discrimination law that discriminates against minorities.  "Strong cultural ties exist between pit bull dogs and the Black community. The same is true of the Latino community." Ann Linder, *The Black Man's Dog: The Social Context of Breed Specific Legislation*, 25 Animal Law 51 (2018);[11] Yasmin Nair, *Racism and the American Pit Bull*, Current Affairs, September 19, 2016.[12]  According to John Radford, *Black America's Dog*, Georgia Political Review, November 19, 2019,[13]

> Many pit bull owners, particularly those who are Black and Brown in low-income communities see these [Pit Bull ban] laws as yet another tool of the political and economic affluent to discriminate against and ostracize both marginalized racial minorities and an innocent type of dog.

As explained by Robert Schmad, *Academics say fear of pit bulls is linked to….racism?*, Campus Reform, July 26, 2021,[14]

> A University of Denver study found that the city's pit bull ban disproportionately affected racial minorities. University of Denver researchers claim that enforcement of Denver's pit bull ban "has taken place primarily in our communities of color in Denver," and that "this criminalization of certain pet owners has exacerbated the barriers they already experience to accessing pet support services."

According to the US Census Bureau, 64.1 percent of residents of that County are "Black or African American alone".[15]  Hispanics make up 20.4 percent of the County population according to the US Bureau of Census.[16]  Of the 955,306 people (population estimate, July 1, 2021)

---

[11] https://law.lclark.edu/live/files/32171-25-1-third-articlepdf
[12] https://www.currentaffairs.org/2016/09/racism-and-the-american-pit-bull
[13] http://georgiapoliticalreview.com/black-americas-dog/
[14] https://www.campusreform.org/article?id=17867
[15] https://www.census.gov/quickfacts/fact/table/princegeorgescountymaryland/RHI225221.
[16] https://www.census.gov/quickfacts/fact/table/princegeorgescountymaryland/RHI225221.


807,233 persons are a minority class.[17] Thus 84.5 percent of the population in Prince George's County are a minority class.

### THE BALANCE OF HARDSHIPS TIPS DECIDELY TOWARD PLAINTIFFS

In the present situation, the balance of the hardships tips decidedly towards Pena. As explained above, Pena has still not been provided with the opportunity to contest the seizure of his dogs, despite the statute affording him a hearing within 72 hours of the seizure. Pena is being told, in a legal sense, to give up his right to participate in the lawful activity of property ownership. It is worth noting, however, that in his mind and in the mind of a great many other, similarly situated property owners, they are being told to give up their family members. Animals are legally property; this is agreed upon. But these are not mere chattel; these are their companions who were stripped away from their owners in traumatic fashion by callous individuals, and with no means for them to ever see them again.

Moreover, the lack of standards, guidelines and notice to the public as to how to determine what a "Pit Bull" is, renders the unconstitutional for failing to give notice of what conduct is prohibited. Furthermore, the lack of any scientific basis vis-à-vis whether a dog is a "Pit Bull" is overbroad and encompasses dogs that are not "Pit Bulls" while at the same time permitting dogs that are "Pit Bulls" to reside in the County.

### CONCLUSION

For all of the reasons set forth above, as well as those set forth in the accompanying Complaint, Plaintiffs respectfully request this Court to Order that Bubba and Heidi be immediately returned to George Pena.

Dated: August 25, 2022

---

[17] https://www.census.gov/quickfacts/fact/table/princegeorgescountymaryland/RHI225221.

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
(NY Reg. No. 1637677)
545 E. Jericho Turnpike
Huntington Station, New York 11746
Phone: 718-261-0200
Fax: 718-793-2791
Email: richard@thedoglawyer.com
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2022 a copy of the foregoing Memorandum in Support of the Motion for TRO was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL